IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEBORAH GUERRERO,**

       **Plaintiff,**

  v.                                       Civil Action 2:19-cv-1426
                                                 Judge Edmund A. Sargus, Jr.
                                                 Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Deborah Guerrero, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income Benefits ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 9) be **OVERRULED** and that judgment be entered in favor of Defendant.

### I.    BACKGROUND

Plaintiff filed her application for SSI on March 16, 2016, alleging that she was disabled beginning November 30, 2014. (Tr. 575–80). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on November 30, 2018. (Tr. 429–54). On December 18, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 11–26). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–5).

Plaintiff filed the instant case seeking a review of the Appeals Council's decision on April 15, 2019 (Doc. 1), and the Commissioner filed the administrative record on July 1, 2019 (Doc. 8). This matter is now ripe for review. (*See* Docs. 9, 10, 11).

In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2016, the application date. (Tr. 13). He found that Plaintiff suffers from the following severe impairments: degenerative disc disease of the cervical and lumbar spine, osteoarthritis/degenerative joint disease of the right knee, sleep apnea, and diagnosis of fibromyalgia. (*Id*.). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 16).

As for Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [T]he claimant has the residual functional capacity to perform a range of light work. More specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can sit for up to six hours in a workday; can stand and/or walk for up to six hours in a workday; can push and/or pull as much as can lift and/or carry; can frequently operate foot controls with the right foot; can occasionally climb ramps, stairs, ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; can occasionally work at unprotected heights and operate a motor vehicle; and can frequently work with moving mechanical parts and in vibration.

(Tr. 17).

### A. Relevant Hearing Testimony

The ALJ summarized the testimony from Plaintiff's hearing:

> At the hearing, the claimant's assertions of mental complaint remained secondary, minimal, and general, such as stating she had depression and problems with short-term memory. Treatment was conservative, consisting primarily of medication. Any counseling was infrequent and had become even less. (*See* previous discussion of non-severe/non-medically determinable impairment). With respect to her primary complaint, the claimant's focus was on the symptom of pain. She said she stopped working in 2014 because of back pain radiating into the shoulders. She did not believe she could return to that job (i.e. Quality Assurance) because she could not be on her feet, had recent fainting spells, and had back and hip pain. The claimant said she filed a prior application in 2010 because of issues with her back; it was her contention now that her back was worse. Yet, she also denied work from 2007 to 2011 not because of alleged impairment [but] because of having moved to another state.

> According to the claimant, treatment for asserted pain, be it back, knee, or other pain, was primarily conservative, consisting of medication management. She had historically had injections but denied more than a couple of days of benefit. She had historically had an ablation treatment but denied any benefit. She said a couple of knee aspirations and a minimally invasive laparoscopic procedure on the right had been helpful. She had obstructive sleep apnea (OSA). Treatment was likewise conservative, such as use of a CPAP and/or medication; treatment was helpful. She vaguely alleged recent black out/fainting spells. She used medication and took other conservative measures for asserted urinary frequency. The claimant vaguely, somewhat evasively, and unpersuasively said she "can't lift hardly anything anymore." She maintained she could be on her feet only "a couple of minutes." She took breaks when performing chores such as vacuuming and washing dishes.

(Tr. 18–19).

### B. Relevant Medical Evidence

The ALJ also usefully summarized Plaintiff's medical records and symptoms. First, in considering whether Plaintiff's mental health impairment is severe, the ALJ considered her mental health records:

> Medical records fail to support finding mental impairment severe. The claimant did not seek out or require any regular specialized mental health treatment. To the extent treatment was received, it was conservative, consisting of medication management with a general practitioner. The claimant rarely had complaint of mental health symptomatology. When she did have complaint, it was acute, situational in nature at times, and not inappropriate. For example, she had complaint secondary to financial concerns (Exhibit l7F/ 13, 21) and/or familial issues (*e.g.*, Exhibit 3F/ 101). Mental status findings were not proved significantly deficient on any persistent or sustained basis. Rather, aside from a general reference to an anxious, depressed, and/or constricted mood and/or affect at times, and even more rare, if not only singular, of irritability or flight of ideas, mental status findings were unimpressive. This included no significant and persistent deficit in areas such as appearance, behavior, speech, thought processes or content, memory, attention, concentration, persistence, pace, psychomotor function, alertness, orientation, intellect or higher cognitive functions, interactions or social functioning. (Exhibits 3F/ 16, 18-19, 22, 24, 27, 58, 65, 71, 76, 81, 84, 87, 91, 93, 95-96, 97-98, 99-100, 101-02; 4F/5, 19; 7F/2, 4-5,6-7, 8-9, 15-16; 12F/ l; 16F/5-6, 14; 17F/ l -2, 3-4, 5-6, 7, 13-14, 15-16, 18, 21-22, 24 28, 31, 34,38-39, 41-42, 43-44, 47, 51, 54, 57-58; 20F/31; 22F/3, 7-8, 10-11; and 23F). Records were absent any form of increasingly intensive psychiatric or psychological treatment indicating serious and ongoing mental health instability during the period at issue.

(Tr. 15).

> Then, the ALJ considered records pertaining to Plaintiff's back impairment:
>
> Returning to medical records, first in terms of the back/spine, while there was degenerative disc disease, the degree of impairment alleged was not fully supported by the objective medical record. Diagnostically in this case, degenerative changes were primarily mild and no more than mild to moderate within the cervical and/or lumbar spine. There was no significant canal or neural foramina narrowing. There was no lumbar spinal stenosis resulting in pseudolcaudication. There was no herniation, fracture, or subluxation. The sacroiliac joints were intact. Alignment, vertebral body heights, and soft tissues were intact. While there was osteopenia, there was no osteoporosis. (*e.g.*, Exhibits 3F/40, 107, 115, 118; 8F/4-9, 68-69, 88; and 20F/33, 49). In addition, there was no definitive nerve root compression and there was no spinal cord compromise. This included electromyography (EMG)/Nerve Conduction Study (NCS) (Exhibit 8F/4-9). While such testing might suggest possible radiculopathy or myopathy, there were no findings strong enough for any such definitive findings and the diagnostic testing as discussed above did not substantiate or support finding significant nerve root compression or spinal cord compromise.
>
> Objective clinical findings likewise failed to support the degree of back/spine impairment alleged by the claimant. Decreased range of motion, if any, was highly colored by subjective assertion of pain and/or tenderness. Strength was unremarkable, with no significant and sustained weakness. Reflexes and sensation were unimpressive, with motor and sensory function within normal limits. Aside from subjective tenderness, joints were intact, with no sustained redness, warmth, swelling, edema, crepitus, laxity, instability, or synovitis. There was no atrophy, clonus, flaccidity, spasticity, or fasciculation. The claimant did not have an inability to ambulate independently and effectively, including records repeatedly absent any indication of use, let alone medically necessary and required use, of an ambulatory assistive device such as a cane. (*e.g.*, Exhibits 3F/ 16, 18-19, 22, 24, 27, 71, 76, 81, 84, 87; 4F/5, 19; 7F/2, 11, 17; 8F/91-93, 100, 104, 150-51, 155-56; 12F/ l; 14F/4, 8; 16F/5-6, 14; 17F/ 10, 18, 24, 28, 31, 34, 47, 51, 54;20F/31; 22F/3, 10-11; and 23F).
>
> While the claimant received treatment for complaint of back/spine pain, treatment was primarily conservative with medication. The claimant required no regular and extensive aggressive specialized care for the spine or surgical intervention. Objective medical records were absent evidence of significant progression or worsening during the period at issue. While the claimant might take breaks in performance of activities and/or do activities less frequently, objective medical records were not supportive of the degree of limitation now alleged, including no evidence [sic] to corroborate the claimant's vague assertion of being able to stand only a couple of minutes or unable to lift "hardly anything." Based upon the objective medical record, such assertions are suggestive of exaggeration. Given

4

such aforementioned evidence and consideration of the longitudinal record, limitation to light exertional work and additional nonexertional limitation to occasional posturals, occasional work at unprotected heights, and frequent work with moving mechanical parts and in vibration is adequate to accommodate degenerative disc disease and symptoms when considered singularly and in combination with other impairment and symptoms since March 15, 2016, the application date.

(Tr. 19–20).

The ALJ then considered records concerning Plaintiff's right knee impairment:

Next, the degree of right knee impairment, symptoms and limitations alleged by the claimant are not fully consistent with or supported by the objective medical record. While a right arthroscopy was provided to the claimant, it was minimally invasive and not extensive, consisting only of partial medical meniscectomy for a small medical meniscal tear, chondroplasty and removal of loose bodies. The claimant did not attend physical therapy and, after the procedure, had no effusions, with range of motion intact and/or no more than mildly reduced. (Exhibit 14F/8). Overall and as previously discussed, while there was osteopenia, there was no osteoporosis. Any knee dysfunction did not have a significant effect on other joints, such as the hips for example, with sacroiliac joints intact (*e.g.*, Exhibit 3F/43, 108). Degenerative changes within the right knee were minimal and any effusion only intermittently small and no more than moderate. There was no diagnostic evidence of ligament dysfunction, instability, laxity, lateral meniscus dysfunction, or neurovascular abnormality (*e.g.*, Exhibits 8F/ 132; l0F/ 10; and 20F/326).

Objective clinical findings likewise failed to support the degree of right knee impairment alleged by the claimant. Decreased range of motion, if any, was minimal and highly colored by subjective assertion of pain and/or tenderness. Strength was unremarkable, with no significant and sustained weakness. Reflexes and sensation were unimpressive, with motor and sensory function within normal limits. Aside from subjective tenderness, general crepitus, and rare small to moderate effusion responsive to treatment, joints were intact, with no sustained redness, warmth, swelling, edema, crepitus, laxity, instability, or synovitis. There was no atrophy, clonus, flaccidity, spasticity, or fasciculation. The claimant did not have an inability to ambulate independently and effectively, including records repeatedly absent any indication of use, let alone medically necessary and required use, of an ambulatory assistive device such as a cane (*e.g.*, Exhibits 3F/ 16, 18-19, 22, 24, 27, 71, 76, 81, 84, 87; 4F/5, 19; 7F/2, 11, 17; 8F/91-93, 100, 104, 150-51, 155-56; 12F/ 1; 14F/4, 8; 16F/5-6, 14; 17F/ 10, 18, 24, 28, 31, 34, 47, 51, 54; 20F/31; 22F/3, 10-11; and 23F).

(Tr. 20–21).

Finally, the ALJ considered Plaintiff's treatment for fibromyalgia:

5

> Next, the undersigned considered a diagnosis of fibromyalgia. Yet, absent general tender points rarely observed at levels said to be consistent with 2010 criteria (*e.g.*, Exhibit 4F/8), records were absent any suggestion of significant or sustained active inflammatory or erosive processes. Motor and sensory functions were normal. There was no significant and sustained synovitis. Strength was full. Reflexes and sensation were largely intact. There was no atrophy. Muscle tone and bulk were normal. Range of motion was likewise unimpressive, essentially only self-limited by alleged pain and/or tenderness (*e.g.*, Exhibits 3F/ 16, 18-19, 22, 24, 27, 37, 43, 71, 76, 81, 84, 87, 106, 108, 115; 4F/5, 19; 7F/2, 11, 17; 8F/91-93, 100, 104, 132, 150-51, 155-56;l0F/ 10; 12F/ 1; 14F/4, 8; 16F/2, 14; 17F/ 10, 18, 24, 28, 31, 34, 47, 51, 54; 20F/29, 31, 33, 326;22F/3, 10-11; and 23F). Moreover, as previously discussed, there was no evidence of significant or sustained deficits in cognitive or higher level functions, appearance, behavior, speech, thought processes or content, memory, attention, concentration, persistence, pace, psychomotor function, alertness, orientation, interactions or social functioning (Exhibits 3F/ 16, 18-19, 22, 24, 27, 58,65, 71, 76, 81, 84, 87, 91, 93, 95-96, 97-98, 99-100, 101-02; 4F/5, 19; 7F/2, 4-5, 6-7, 8-9, 15-16; 12F/ 1; 16F/5-6, 14; 17F/ l-2, 3-4, 5-6, 7, 13-14, 15-16, 18, 21-22, 24 28, 31, 34, 38-39, 41-42, 43-44, 47, 51, 54, 57-58; 20F/31; 22F/3, 7-8, 10-11; and 23F).

(Tr. 21).

### C. The ALJ's Decision

After thoroughly reviewing the hearing testimony and medical record, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "not fully consistent with the record." (Tr. 23). Relevant here, the ALJ considered the severity of Plaintiff's mental health impairment. In doing so, he considered the relevant opinion evidence:

> State agency psychological/psychiatric consultants found mental impairment non-severe (Exhibits l A/11 and 3A/13-15). The opinions are consistent with and supported by the aforementioned evidence and longitudinal record, including updated records. Mental status findings were unimpressive, absent persistent, sustained, and significant quantifiable deficits. Mental health treatment, if any, was low level. The claimant's daily activities were reportedly limited primarily, if not solely, due to physical complaint. The claimant had no regular complaint of mental health symptomatology, and when there was complaint, it was often acute, situational, and not inappropriate. Nonetheless, the undersigned acknowledges that he evaluated impairments under the new paragraph B criteria as opposed to the old criteria relied upon by the State agency consultants. Thus, the opinions are given partial weight.

6

(Tr. 15).

The ALJ also engaged in an extensive review of Plaintiff's mental health treatment records and concluded that Plaintiff's mental health impairment is not "severe." (*Id.*). He explained,

> [i]n sum, with respect to mental impairment, the record as a whole does not support finding mental impairment "severe" during the period at issue. More specifically, the claimant, due to mental impairment, had no restriction in being able to understand, remember or apply information; mild difficulties in interacting with others; mild difficulties in concentrating, persisting, or maintaining pace; and mild difficulties in adapting or managing oneself. Because mental impairment did not cause more than minimal limitation in the claimant's ability to perform basic work activities for any period of at least 12 consecutive months, they are non-severe. In addition, records, including but not limited to the aforementioned, did not establish that the claimant had only marginal adjustment, that is, a minimal capacity to adapt to changes in her environment or to demands that are not already part of [sic] her daily life. (20 CFR 416.920).

(*Id.*).

The ALJ then turned to the opinion evidence regarding Plaintiff's physical symptoms. First, he considered the opinions of the state agency medical consultants who found a less restrictive range of light exertional work. (Tr. 22). The ALJ assigned these opinions "partial weight," explaining that, while they were "bolstered by the objective medical record at the time of proffering, as well as the low level of treatment," the record and hearing testimony supported a "more restrictive range of light exertional work." (*Id.*). Next, he considered the February 2018 statement of Dr. Courtney Bonner, who described Plaintiff as "disabled and [unable] to work at this time." (Tr. 23). The ALJ gave this opinion "no weight," explaining that it is "conclusory and not a quantifiable function-by-function assessment." (*Id.*).

Finally, the ALJ considered Plaintiff's use of an assistive device. (*Id.*). He found that while she testified that she was prescribed and used a cane for stability, medical records rarely documented the use of a cane or other ambulatory or assistive device and the objective medical evidence did not support the required use of such a device. (*Id.*).

7

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff asserts two assignments of error. First, she argues that the ALJ failed to classify her mental conditions as severe impairments. (Doc. 9 at 5–9). Second, she argues that the ALJ should be reversed based on new and material evidence. (Doc. 9 at 10–13).

### A. Severity Finding

First, Plaintiff contends that the ALJ erred in finding that her mental health impairment is not severe, and, due to that error, the RFC fails to account for her mental health issues. (Doc. 9 at 5–9). More specifically, she asserts that: (1) the record contains overwhelming medical evidence

documenting her ongoing mental health problems; (2) the ALJ should not have relied on the state agency psychologists' opinions because they did not have access to the entire medical record; and (3) the ALJ failed to consider her mental health impairment after step two of the sequential analysis. (*See generally* Doc. 9).

A claimant "bears the burden of demonstrating that he suffers from a medically determinable physical impairment" as well as "the burden of showing a severe impairment by medical evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 559 (6th Cir. 2014); *Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 421 (6th Cir. 2013). "[A]n impairment is considered 'severe' unless" it "has no more than a minimal effect on [the claimant's] physical or mental abilit[ies] to perform basic work activities." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x. 315, 324 (6th Cir. 2015). The Sixth Circuit construes the Step Two severity regulation as a "*de minimis* hurdle," *Rogers*, 486 F.3d at 243 n.2 (internal quotation marks and citation omitted), intended to "screen out totally groundless claims," *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). In reviewing the ALJ's severity finding, the Court's job is not to decide whether it would find differently, but whether substantial evidence supports the ALJ's finding. *See Reed v. Colvin*, No. CIV. 13-54-GFVT, 2014 WL 318569, at *3 (E.D. Ky. Jan. 29, 2014) ("The limited nature of substantial evidence review prevents the reviewing court from substituting its judgment for that of the ALJ.").

Here, the ALJ concluded that Plaintiff's mental health symptoms would have no more than a minimal effect on her ability to perform basic work activities. (Tr. 15). In reaching this conclusion, he considered a number of relevant factors. First, the ALJ considered Plaintiff's subjective complaints:

> When filing her application, the claimant did not allege mental impairment (Exhibit 2E). Prior to the hearing, she inconsistently and vaguely alleged anxiety and

depression (*e.g.*, Exhibit 1 A/7). At the hearing, the claimant's primary focus remained on physical complaint, largely of pain. The claimant only generally and vaguely alleged depression or memory problems, for example. She testified to no more than conservative treatment, such as medication management and infrequent counseling. In fact, she testified to a decrease in frequency of counseling sessions. The claimant did not complete and/or provide function reports in conjunction with her current application and appeal. Through telephone contact, she solely alleged physical complaint affecting activity duration for cleaning and cooking for example (*e.g.*, Exhibit 1 A/5-6). At the hearing, she denied grocery shopping, going to the bank, or driving for the past two years; however, she largely, if not solely, asserted physical reasons. With respect to household chores, such as vacuuming and washing dishes, she said she needs too many breaks because of physical complaints. When asked why she felt she could not do past work, she asserted only physical bases, such as saying she could not be on her feet and had fainting spells and back pain. Other records likewise reasonably indicate the claimant's assertion that to the extent activities were limited, they were secondary to personal choice, financial standing, and/or physical complaint. The claimant reported she had returned to the area in fact to take care of a family member (Exhibit 3F/64). She did chores, such as taking out the trash (Exhibit 3F/99). She enjoyed going out and said that it was limited secondary to transportation issues and/or dependence upon others for income (Exhibit 1 7F/ 13, 21). She was independent in personal care (Exhibit 16F/2). She went out, with records reasonably indicating shopping as the claimant reported running after a shopping buggy in March 2018 (Exhibit 20F/29). Even granting that the claimant might perform some activities with breaks and/or less frequently for example, the aforementioned evidence reasonably reflects self-limitation secondary primarily, if not solely, due to physical complaint and not mental deficiencies.

(Tr. 14–15).

The ALJ properly considered these subjective complaints and compared them with the medical record. Once an underlying medical impairment is found, the ALJ "may examine a number of other factors besides medical signs and laboratory findings to determine the severity of the alleged pain or other subjective symptoms[.]" *Layne v. Berryhill*, No. 1:16-CV-470-TRM-CHS, 2018 WL 1077356, at *3 (E.D. Tenn. Feb. 5, 2018), rep*ort and recommendation adopted sub nom. Layne v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-470, 2018 WL 1075034 (E.D. Tenn. Feb. 26, 2018). "In addition to the objective medical evidence, the claimant's own statements regarding the persistence, intensity, and limiting effects of his symptoms will be considered;

however, in considering those statements, the claimant's credibility will be evaluated." *Layne*, 2018 WL 1077356, at *3 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036–37 (6th Cir. 1994)). And, because it is the job of the ALJ, not the reviewing court, to make credibility findings, such findings "'are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints.'" *Id*. (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)).

Second, the ALJ properly considered the opinion evidence regarding Plaintiff's mental health:

> State agency psychological/psychiatric consultants found mental impairment non-severe (Exhibits 1 A/11 and 3A/13-15). The opinions are consistent with and supported by the aforementioned evidence and longitudinal record, including updated records. Mental status findings were unimpressive, absent persistent, sustained, and significant quantifiable deficits. Mental health treatment, if any, was low level. The claimant's daily activities were reportedly limited primarily, if not solely, due to physical complaint. The claimant had no regular complaint of mental health symptomatology, and when there was complaint, it was often acute, situational, and not inappropriate. Nonetheless, the undersigned acknowledges that he evaluated impairments under the new paragraph B criteria as opposed to the old criteria relied upon by the State agency consultants. Thus, the opinions are given partial weight.

(Tr. 15).

Plaintiff argues that the ALJ erred in relying on these opinions because the consultants, who provided their opinions in December 2016, did not have access to subsequent treatment records. (Doc. 9 at 7–8). To start, the Undersigned notes that the ALJ did not adopt these opinions wholesale. Rather, the ALJ afforded them partial weight and considered other relevant factors in concluding that Plaintiff's mental health impairment is not severe. More importantly, and as Defendant notes, while the consultants did not have access to the entire record, the ALJ did. Indeed, in considering the severity of Plaintiff's mental health impairment, the ALJ relied on exhibits from the record that were submitted after the consultants' opinions. (*See* Tr. 15 (citing

individual records from Exhibits 7F, 12F, 16F, 17F, 20F, 22F, and 23F)). Upon his review of these, and other records, the ALJ concluded that, "aside from a general reference to an anxious, depressed, and/or constricted mood and/or affect at times, and even more rare, if not only singular, of irritability or flight of ideas, mental status findings were unimpressive." (*Id.*). Accordingly, the ALJ's decision establishes that he considered these records, thereby alleviating Plaintiff's concern in this regard.

Finally, the ALJ engaged in an extensive review of Plaintiff's mental health treatment history and medical records:

> Medical records fail to support finding mental impairment severe. The claimant did not seek out or require any regular specialized mental health treatment. To the extent treatment was received, it was conservative, consisting of medication management with a general practitioner. The claimant rarely had complaint of mental health symptomatology. When she did have complaint, it was acute, situational in nature at times, and not inappropriate. For example, she had complaint secondary to financial concerns (Exhibit l7F/ 13, 21) and/or familial issues (*e.g.*, Exhibit 3F/ 101). Mental status findings were not proved significantly deficient on any persistent or sustained basis. Rather, aside from a general reference to an anxious, depressed, and/or constricted mood and/or affect at times, and even more rare, if not only singular, of irritability or flight of ideas, mental status findings were unimpressive. This included no significant and persistent deficit in areas such as appearance, behavior, speech, thought processes or content, memory, attention, concentration, persistence, pace, psychomotor function, alertness, orientation, intellect or higher cognitive functions, interactions or social functioning. (Exhibits 3F/ 16, 18-19, 22, 24, 27, 58, 65, 71, 76, 81, 84, 87, 91, 93, 95-96, 97-98, 99-100, 101-02; 4F/5, 19; 7F/2, 4-5,6-7, 8-9, 15-16; 12F/ l; 16F/5-6, 14; 17F/ 1 -2, 3-4, 5-6, 7, 13-14, 15-16, 18, 21-22, 24 28, 31, 34,38-39, 41-42, 43-44, 47, 51, 54, 57-58; 20F/31; 22F/3, 7-8, 10-11; and 23F). Records were absent any form of increasingly intensive psychiatric or psychological treatment indicating serious and ongoing mental health instability during the period at issue.

(Tr. 15).

Plaintiff counters this analysis by citing mental health treatment records purportedly establishing the severity of her impairment. (Doc. 9 at 8–9). At base, she is arguing that the ALJ erred in his assessment of the medical evidence because the ALJ reached a conclusion that differs

from her view of the evidence. This is not grounds for reversal. "The ALJ is not bound to accept evidence that is contradictory to, or unsupported by the evidence of record. When there are contradictory opinions in the record, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner." *Jones v. Soc. Sec. Admin.*, No. CIV. 3:13-1204, 2015 WL 1235039, at *10 (M.D. Tenn. Mar. 17, 2015) (citing 20 C.F.R. § 416.927(e)(2)).

Nor was the ALJ required to repeat his analyses throughout the sequential evaluation, despite Plaintiff's arguments otherwise, (*see* Doc. 9 at 9–10). Such a requirement would be a "'needless formality.'" *Jones v. Comm'r of Soc. Sec.*, No. 1:10 CV 2590, 2012 WL 727737, at *23 (N.D. Ohio Mar. 6, 2012) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)) (holding that, because the ALJ thoroughly examined the record when analyzing whether plaintiff's impairment met or equal a listing, "it was not necessary for her to repeat these findings again" when discussing credibility).

In sum, because the ALJ considered Plaintiff's subjective statements, the opinion evidence, and the medical records, substantial evidence supports his conclusion that Plaintiff's mental health impairment is not severe.

**B. New and Material Evidence**

Turning to her second assignment of error, Plaintiff requests that the Court remand her case due to the presence of new and material evidence. Under "Sentence Six" of 42 U.S.C. § 405(g), a court may remand a social security case "for further administrative proceedings" where "a claimant shows that the evidence is new and material, and that there was good cause for not presenting [it] in the prior proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). The claimant carries the burden to show that remand is warranted. *Id.*

Here, a week after the ALJ issued his decision, Plaintiff submitted more than 400 pages of

medical evidence to the Appeals Council.  (*See* Tr. 5, 32–426).  As Plaintiff concedes, most of the records pre-date the administrative hearing.  (Doc. 9 at 11).  Only two sets of records post-date the hearing.  (*See* Tr. 417–26; 32–35).  Plaintiff asserts that the ALJ's decision should be reversed due to the presence of this evidence.  (*See* Doc. 9 at 10–13).

Under sentence six of 42 U.S.C. § 405(g), Plaintiff has the burden to demonstrate that the evidence is "new," "material," and "and that there is "good cause" for failing to present this evidence in the prior proceeding.  *Collins v. Comm'r of Soc. Sec.*, No. 10-15000, 2011 WL 6654467, at *2 (E.D. Mich. Nov. 9, 2011), *report and recommendation adopted sub nom. Collins v. Comm'r of Soc. Sec.*, No. 10-15000, 2011 WL 6440872 (E.D. Mich. Dec. 21, 2011) (citing *Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 483 (6th Cir. 2006); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 598 (6th Cir. 2005)).  "Courts 'are not free to dispense with these statutory requirements.'"  *Collins*, 2011 WL 6654467, at *2 (quoting *Hollon,* 447 F.3d at 486).  Plaintiff has failed to meet her burden here.

Turning to the first category of records—those pre-dating the administrative proceeding—this evidence is not "new."  Plaintiff acknowledges that these documents pre-date the hearing and are, therefore, not "new." (Doc. 9 at 11).  She argues instead that they were "unavailable" to her because she had only two months after the ALJ's decision to submit additional evidence to the Appeals Council and that it takes a long time to gather medical records.  (*Id*.).  But the inquiry is not whether Plaintiff could have submitted the records to the Appeals Council but rather, whether she could have submitted them to the ALJ before the administrative hearing.  *See Hollon*, 447 F.3d at 485 (noting that a claimant must show a reasonable justification for failing to acquire and present the evidence for inclusion in the hearing before the ALJ).

Plaintiff has not shown that the records were unavailable to her at the time of the hearing;

14

rather, she admits that she waited until after the ALJ's decision to gather additional records in support of her appeal. *Cf. Strong v. Colvin*, No. 3:14CV00367, 2015 WL 9489790, at *5 (S.D. Ohio Dec. 30, 2015), *report and recommendation adopted*, No. 3:14CV00367, 2016 WL 246972 (S.D. Ohio Jan. 21, 2016) (finding that evidence was "unavailable" to plaintiff where counsel explained at the administrative hearing that the Ohio Department of Job and Family services had recently outsourced their records to a firm in Massachusetts).

As for the second category of documents—roughly 15 pages of records post-dating the administrative hearing—the Undersigned finds that they are "new" for purposes of Sentence Six. Plaintiff, however, has failed to establish that they are "material." Evidence is material if there is "a reasonable probability" that the ALJ would have found differently "if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

Here, the "new" records consist of several treatment records and imaging results concerning Plaintiff's syncope (fainting or passing out) condition. For example, in December 2018, shortly after the administrative hearing, Plaintiff went to a follow-up appointment for her syncope condition. (*See* Tr. 417, 419). At an appointment the following month, she complained of dizziness, nausea, and blackouts. (Tr. 32). She underwent an MRI of the brain, which revealed no acute intracranial abnormality but mild nonspecific white matter changes that could represent chronic small vessel ischemic disease. (Tr. 34). Plaintiff asserts that this evidence "documents significant problems with [her] syncope," including "loss of balance, difficulty walking and standing, and slurred speech." (Doc. 9 at 12). She states that these symptoms would "surely impact [her] ability to work." (*Id*.).

But the problem for Plaintiff is that the ALJ was aware of these symptoms when he made his decision. For example, he noted in his opinion that "[w]hen asked why she felt she could not

15

do past work, she asserted . . . she could not be on her feet and had fainting spells and back pain."

(Tr. 14). And, at the hearing, Plaintiff explained that she had recently been hospitalized after blacking out and passing out. (Tr. 441.). In asserting that these follow-up appointments after her fall are material, she does not explain how they would have changed the ALJ's decision when he was aware, at the time of the hearing, of her recent hospitalization from fainting. Indeed, a mere diagnosis of a disease is not indicative of the severity of an impairment. *Blair v. Comm'r of Soc. Sec.*, No. 3:13-CV-105, 2014 WL 3732959, at *7 (S.D. Ohio July 25, 2014), *report and recommendation adopted*, No. 3:13-CV-105, 2014 WL 4071890 (S.D. Ohio Aug. 14, 2014). And, as one district court explained,

> . . . simply because plaintiff suffers from a certain condition or carries a certain diagnosis does not equate to disability or a particular RFC. Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240 (6th Cir. 2002). Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily mean that condition is "severe" under the Act or that her RFC would be different because of it. Simply, plaintiff does not adequately explain why or how the records submitted would have reasonably persuaded the ALJ to make a different decision for the period at issue and thus, the undersigned concludes that a sentence six remand based on the post-decision records is not appropriate.

*Richardson v. Comm'r of Soc. Sec.*, No. 11-12605, 2012 WL 4210619, at *5 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted sub nom. Richardson v. Comm'r of Soc. Sec.*, No. 11-12605, 2012 WL 4210616 (E.D. Mich. Sept. 20, 2012). The same is true here. The fact that Plaintiff was diagnosed with syncope after the administrative proceeding does not mean that the ALJ would have reached a different decision based on that diagnosis. *See, e.g.*, *Grbavcich v. Colvin*, No. 2:14-CV-249, 2015 WL 9238996, at *6 (W.D. Mich. Dec. 17, 2015) (holding that new evidence of knee surgery does not, by itself, show that the evidence is material).

16

Further, these records are not accompanied by a medical opinion on Plaintiff's functional ability through the date last insured. Without such an opinion, it is even more difficult for Plaintiff to meet her burden to show materiality. *See, e.g.*, *Hammond*, 2016 WL 8115398, at *5 (finding that new evidence showing diagnosis of chronic obstructive pulmonary disease was not material and citing the lack of opinion evidence); *Ehmcke v. Comm'r of Soc. Sec.*, No. 14-14301, 2015 WL 12672747, at *11 (E.D. Mich. Sept. 11, 2015) (denying request for Sentence Six remand, explaining, in part, that the additional records did not contain opinion evidence on plaintiff's functional ability through the date last insured), *report and recommendation adopted*, No. 14-CV-14301, 2015 WL 5719672 (E.D. Mich. Sept. 30, 2015) (citing *Lancaster v. Astrue*, No. 1:07-CV-0044, 2009 WL 1851407, at *12 (M.D. Tenn. June 29, 2009) (finding that a "retrospective diagnosis relating back to the insured period may be considered proof of disability only if it is corroborated by evidence contemporaneous with the eligible period")).

And, even if the new records were material, Plaintiff, could have—but did not—ask for additional time to submit records from her follow-up appointments from her fall or to hold the record open so these records could be included at a later date. *See Dunlap v. Astrue*, No. 3:10-CV-2364, 2011 WL 5037231, at *11 (N.D. Ohio Oct. 24, 2011) (noting that counsel did not seek to have the record remain open for additional evidence and that "the mere fact that [the] additional evidence is dated after the ALJ rendered his decision is not a sufficient basis to establish good cause") (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (noting that the onset of the claimant's impairment occurred before the hearing and that counsel "did not seek to have the record remain open" until additional evidence could be made part of the record)).

Finally, to the extent that Plaintiff contends the additional evidence shows that her condition worsened, (*see, e.g.*, Doc. 9 at 12 (citing records wherein she complains of worsening

17

symptoms)), or that she suffered new impairments following the administrative proceeding, such evidence is not relevant to the case, *see id.* (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988) ("Evidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began. . . . If in fact the claimant's condition had seriously degenerated, the appropriate remedy would have been to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment.")); *see also Issac v. Comm'r of Soc. Sec.*, No. 1:16 CV 1345, 2017 WL 3705902, at *10 (N.D. Ohio Aug. 28, 2017) (noting that "[i]t is well established that a Sentence Six remand is not appropriate to consider evidence that a claimant's condition worsened after the administrative hearing" and rejecting evidence of worsened shoulder pain post-dating the ALJ's decision) (quotation marks and citations omitted).

In sum, Plaintiff has failed to carry her burden to show that remand is justified here.

### IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 9) be **OVERRULED** and that judgment be entered in favor of Defendant.

### V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or

modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: December 13, 2019     /s/ Kimberly A. Jolson
                            KIMBERLY A. JOLSON
                            UNITED STATES MAGISTRATE JUDGE